# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**MCMECHEN VOLUNTEER FIRE DEPARTMENT, INC.,**
**Employer Below, Petitioner**

**FILED**

May 29, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0178** (BOR Appeal No. 2052094)
            (Claim No. 2015025832)

**JEANNETTE ROSE, WIDOW OF GARRY ROSE,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner McMechen Volunteer Fire Department, Inc., by Daniel Murdock, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Jeannette Rose, widow of Garry Rose, by Jeffrey Kessler, its attorney, filed a timely response.

The issue on appeal is dependent's benefits. The claims administrator denied dependent's benefits on March 23, 2015. The Office of Judges reversed the decision in its June 23, 2017, Order and granted dependent's benefits. The Order was affirmed by the Board of Review on January 31, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Garry Rose, a firefighter and EMT, died in the course of his employment on February 6, 2015. A treatment note from Ohio Valley Medical Center that day indicates Mr. Rose, who was sixty-seven, was performing his duties as an EMT when he brought a patient to the emergency room. While there, Mr. Rose collapsed, was unable to be revived, and passed away. The clinical impression was cardiac arrest.

In a witness statement, Susan Rucki, an EMT who worked with Mr. Rose, stated that on that day, she and Mr. Rose were called out for an emergency. They met at the patient's house,

1

carried him down the stairs, and loaded him into the ambulance. Mr. Rose then drove to the emergency room and helped move the patient to a bed. He then cleaned and redressed the ambulance cot and loaded it back into the ambulance. Ms. Rucki stated that she was waiting in the lobby when she saw Mr. Rose collapse to the ground. Cardiopulmonary resuscitation was immediately started but he did not respond. Ms. Rucki also completed an incident report in which she stated that she and Mr. Rose were dispatched in the early hours of February 5, 2016, to assist with a patient. Ms. Rucki stated that she was about four feet from Mr. Rose when he collapsed. Though cardiopulmonary resuscitation was immediately started, Mr. Rose did not respond and was pronounced dead.

Crystal Brown also gave a statement regarding Mr. Rose's death. She stated that she was an EMT and responded to the same call as Mr. Rose on February 5, 2016. Ms. Brown noted that the patient weighed between 100 and 130 pounds. Ms. Brown stated that she, Mr. Rose, Ms. Rucki, and two police officers carried the patient down a set of stairs and loaded him into the ambulance. Mr. Rose then drove the ambulance to the hospital, pushed the patient into the emergency room, and assisted with the transfer to a bed. Ms. Brown also completed an incident report in which she reiterated that she and Mr. Rose were called to the house of an unresponsive male on February 5, 2016. They loaded the patient into the ambulance and transported him to the emergency room. While there, Mr. Rose collapsed and ultimately died.

The death certificate lists the cause of death as hypertension and arteriosclerotic heart disease. On March 31, 2015, a report of death investigation and post-mortem examination findings was completed by Joseph DelTondo, D.O., Chief Deputy Medical Examiner. The report indicates Mr. Rose had a history of hypertension, high cholesterol, seizures, and a family history of heart attacks. Mr. Rose collapsed at work and after forty minutes of cardiopulmonary resuscitation, was pronounced dead. The autopsy showed hypertension and arteriosclerotic heart disease as well as adrenal cortical adenoma. Dr. DelTondo opined that Mr. Rose died due to hypertensive and arteriosclerotic heart disease. The manner of death was listed as natural.

On May 19, 2015, James Comerci, M.D., Mr. Rose's family physician, completed a report opining that Mr. Rose's physical and emotional exertion during his job duties as an EMT were directly related to his death. He asserted that the activity of transporting the patient contributed to the sudden cardiovascular event.

Ms. Rucki testified in a deposition on December 31, 2015, that she was called to a patient's house on February 5, 2016, and met Mr. Rose there. She stated that after they got the patient loaded onto a cot, she, Mr. Rose, and two police officers carried him down a large number of stairs. She stated that Mr. Rose carried the bulk of the weight. After they arrived at the emergency room, they transferred the patient to a cot and then Mr. Rose redressed and reloaded the cot. She was standing approximately four feet from Mr. Rose when he collapsed, which was approximately five minutes after they arrived at the hospital. Ms. Rucki stated that Mr. Rose did not appear to be in distress over the course of the evening. She testified that the house they were called to had approximately twenty steps which were very steep and uneven. Mr. Rose went up and down them at least twice, once with a patient. She stated that he was at the head of the cot and took most of the weight. Ms. Rucki opined that it was an incredibly tiring call, and she was

exhausted and sweating by the time it was finished, as was Mr. Rose. She stated that it was a high exertion, high stress, and high anxiety transport because the patient was unresponsive and seizing and they had to move as quickly as possible to get him to the emergency room. Once they got to the emergency room, Mr. Rose took the lead because he never let female coworkers take the bulk of the weight, and he did the most strenuous part of the job. Ms. Rucki stated that it probably takes five to ten minutes for her blood pressure and pulse to calm down after a transport. While she was waiting for paper work, Mr. Rose was standing four feet away and appeared to be sweating and in a stressful physical exertion stage. Ms. Rucki testified that he convulsed briefly and then collapsed.

Ms. Brown also testified in a deposition on December 31, 2015. She stated that she worked with Mr. Rose for about two years. On February 5, 2016, she arrived at a call with Mr. Rose. When they got there, they realized the patient was completely unresponsive. She stated that they did not run up the stairs because they were steep and uneven but they walked as quickly as possible. Mr. Rose went up and down the stairs twice, once while helping to carry the patient. Ms. Brown stated that Mr. Rose was a gentleman and performed the bulk of the lifting when possible, including when they arrived at the emergency room early that morning.

Dr. Comerci testified in a deposition on November 15, 2016, that he is board certified in family medicine and had been Mr. Rose's family doctor. It was his opinion that the physical and emotional exertion during Mr. Rose's duties as a first responder were directly related to his sudden death, and the activity that day contributed to his sudden cardiovascular event. Dr. Comerci stated that he reviewed Mr. Rose's medical records, the autopsy, and the emergency room records from the date he died. Mr. Rose had arterial bypass surgery five to seven years before his death but had no complaints of chest pain or other cardiovascular problems. Mr. Rose also suffered from chronic obstructive pulmonary disease due to smoking and occupational exposure. Dr. Comerci stated that it was possible that he could have suffered the cardiac event without the stressful activities that proceeded it; however, it would be more surprising if someone had a massive cardiac event that was not proceeded by exertion. He opined that Mr. Rose had a cardiac event which led to hypotension, and it is very common for such an event to cause a seizure.

In a March 9, 2017, file review, ChuanFang Jin, M.D., opined that Mr. Rose's sudden cardiac death was caused by severe coronary artery disease, significant hypertensive heart disease, and fibrosis of the heart. She stated that exertion is not a significant contributor to sudden cardiac death. She agreed with the autopsy report that the cardiac arrest was due to coronary artery disease with significant blockage of two vessels, significant hypertrophy, and probable arrhythmia due to fibrosis of the heart. Dr. Jin found that Mr. Rose's death was unlikely due to a heart attack as the autopsy showed no evidence of acute myocardial infarction. The cardiac arrest was most likely caused by arrhythmia and had no relation to his employment. Dr. Jin stated that she read Dr. Comerci's testimony and disagreed with his conclusion. She stated that his conclusion was based on the presumption that physical activity during work caused heart ischemia and sudden death. She opined that his conclusion overstates the effect of exertion on the heart. The autopsy showed no evidence of heart attack, and Mr. Rose's cardiac event was most likely caused by arrhythmia, which has been found as the cause in a vast majority of sudden

cardiac deaths. She stated that the majority of cardiac deaths occur at rest, not during or right after exertion.

The claims administrator denied Mrs. Rose's request for dependent's benefits on March 23, 2015. The Office of Judges reversed the decision and granted dependent's benefits in its June 23, 2017, Order. It found that Mr. Rose was in the course of his employment when he died. The question to be answered was whether the death was the result of his work. The Office of Judges found that the autopsy listed the cause of death as hypertension and arteriosclerotic heart disease. Statements taken from Ms. Rucki and Ms. Brown, who were with Mr. Rose on the house call prior to his death, indicate that he exerted significant physical effort while responding to the EMS call. The activities included walking up and down steep, uneven stairs multiple times and loading and unloading the patient. The Office of Judges further found that Mr. Rose's treating physician opined that his job duties contributed to his sudden cardiac death. Dr. Jin, on the other hand, found that physical activity has little effect on sudden cardiac death. The Office of Judges concluded that given the record as a whole and Dr. Comerci's personal knowledge of Mr. Rose as his family physician, it was just as likely as not that Mr. Rose's job duties, including emotional and physical exertion, were material, contributing factors in his death. Dr. Comerci's opinion was determined to be of equal evidentiary weight as Dr. Jin's file review given that he had treated Mr. Rose for years and Dr. Jin never examined him. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on January 31, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. It cannot be said that the Office of Judges was clearly wrong in its determination that the opinions of Drs. Jin and Comerci were of equal evidentiary weight. The evidence of record indicates Mr. Rose had an exceptionally strenuous EMS call immediately prior to his death and it is just as likely as not that the physical and emotional exertion contributed to his sudden cardiac death.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 29, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

4